### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DARELL KEENEN GRANT,<br><br>   Plaintiff,<br><br>v.<br><br>RENTGROW, INC.,<br><br>   Defendant. | Civil Action No. 2:24-cv-10613<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT

Darell Keenen Grant ("Plaintiff") by and through his counsel brings the following Complaint against RentGrow, Inc. ("Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report that Defendant published to Plaintiff's potential landlord, which falsely portrayed Plaintiff as a convicted felon, twice reported the same criminal charge, and made it appear as though Plaintiff spent a year in jail.

### INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

1

2. Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendant assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlord, which reported that Plaintiff was convicted of a felony for carrying concealed weapons. .

4. Defendant further made it appear as though Plaintiff was convicted of two separate crimes in two distinct cases by listing two separate criminal records. This was despite the fact that Plaintiff was convicted of only a single misdemeanor.

5. In fact, Plaintiff has never been convicted of a felony in his life.

6. Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the tenant screening report from Defendant, in which Defendant published the inaccurate felony conviction for carrying concealed weapons and inaccurately reported that Plaintiff was convicted of two separate crimes, namely carrying concealed weapons and improper possession of a firearm in a vehicle.

7. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public

2

court records from Wayne County, Michigan, regarding the carrying concealed weapons offense and the improper possession of a firearm in a vehicle offense prior to publishing the information to Plaintiff's prospective landlord.

8. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that Plaintiff has never been convicted of a felony for carrying concealed weapons.

9. It would have also discovered that Plaintiff was originally charged with a single felony count for carrying concealed weapons. However, on May 19, 2022, Plaintiff pled guilty to a reduced misdemeanor charge for improper possession of a firearm in a motor vehicle.

10. Finally, nowhere in the public record is there a statement or suggestion that Plaintiff was sentenced to one year in jail, and yet, Defendant reported a "Sentence Category" of "Commitment" for "1 year 0 m."

11. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

12. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

13. Defendant's inaccurate report cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of his needs and desires, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, and financial loss.

14. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

15. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## **PARTIES**

16. Darell Keenen Grant ("Plaintiff") is a natural person residing in Detroit, Michigan, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

17. Defendant RentGrow, Inc. ("Defendant") is a Delaware corporation doing business throughout the United States, including the State of Michigan and in this District, and has a principal place of business located at 400 5th Avenue, Suite

120, Waltham, Massachusetts 02451. RentGrow can be served at its registered agent Corporation Service Company at 84 State Street, Boston, MA 02109.

18. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

19. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

22. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

23. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

24. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

25. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

26. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

6

27. The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

28. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

29. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

30. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

31. Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

32. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

33. Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

34. Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35. Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

36. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving

the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor as a felony, and that it was inaccurately reporting that Plaintiff was convicted of two separate crimes for carrying concealed weapons and improper possession of a firearm in a motor vehicle. It would have revealed that Plaintiff was originally charged with a felony for carrying concealed weapons but then pled guilty to a reduced misdemeanor charge for improper possession of a firearm in a vehicle.

40. As a provider of tenant screening reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

**Plaintiff Applies for an Apartment with Franklin Village Apartment ("Franklin")**

41. On January 16, 2024, Plaintiff applied for a two-bedroom apartment at Franklin for him and his five-year-old son.

42. Plaintiff submitted an online application, toured the property in person, and paid an application fee of fifty (50) dollars.

43. Plaintiff was applying to Franklin because he sought to move out of his mother's house and because of the fact that this apartment complex was about fifteen (15) minutes closer to his work.

44. Aside from the better location, Plaintiff was also excited about the amenities offered at Franklin, the ample space for his son, and the monthly rent that fit perfectly within his budget.

**Defendant Published an Inaccurate Tenant Screening Report to Franklin**

45. Franklin contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

46. On January 20, 2024, Franklin ordered a tenant screening report on Plaintiff from Defendant.

47. On January 20, 2024, Defendant sold a tenant screening report about Plaintiff to Franklin, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

48. The tenant screening report, identified as "Screening Report" by Defendant, is a consumer report regulated by the FCRA.

10

49. Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

50. Specifically, Defendant's tenant screening report about Plaintiff included a grossly inaccurate and stigmatizing felony conviction for carrying concealed weapons.

51. Furthermore, the report indicated Plaintiff was separately charged and convicted of carrying concealed weapons and improper possession of a firearm in a motor vehicle. In reality, Plaintiff was originally charged with a felony for carrying concealed weapons, but then pled guilty to a reduced charge of improper possession of a firearm in a motor vehicle, which is a misdemeanor.

52. Finally, the report suggested that Plaintiff had been sentenced to a year in confinement, despite the fact that the statute to which he'd pled called for a maximum penalty of 90 days.

53. The subject criminal record from Wayne County, Michigan, appeared in the tenant screening report as follows:

11

| PREMIUM NATIONAL CRIMINAL RECORDS SEARCH | | |
|---|---|---|
| **DATE REQUESTED** | **DATE COMPLETED** | **STATUS** |
| 01/20/2024 10:06 AM | 01/20/2024 10:12 AM | Does Not Meet Property Requireme<br>No Sex Offender Records Found<br>Criminal Records Found |

**GRANT, DARELL**                                                                                        RECORD 1 OF 2

**Last Name:** GR                                 **Sex:** MALE
**First Name:** DARELL                       **Race:** BLACK
**DOB:** 07/10/1990                           **Eyes:** BROW

ge 3 of 7                                                      3

**Hair:** BLACK

**Record Type:** Criminal
**State Of Record:** MI
**Database:** MI D

**WEAPONS-FIREARMS-IMPROPER POSSESSION FIR~**                                               RECORD 1 - CHARGE 1
**State Of Record:** MI
**Court:** WA                                                                                                     **Case #:** UNKNOWN
**Offense:** WEAPONS-FIREARMS-IMPROPER POSSESSION FIREARM IN/UPON VEH
**Offense Date:** 10/10/202
**Disposition:** DOC Superv
**Disposition Date:** 06/30/2022
**Category:** CRIMINAL
**Court Name:** WAYNE
**Court Type:** CRIMINAL
**Fips AreaShortName:** Wayne
**Fips Code:** 2616
**Fips Display:** MI-Wayne (26163)
**Fips StateCode:** MI
**Category:** CRIMINAL
**Counts:** 1
**Last Updated:** 07/17/2023
**Sentence:** 1 year 0 m
**Sentence Amount:** 1 year 0
**Sentence Category:** Commitment
**Sentence Date:** 06/30/202

```
GRANT, DARELL                                                    RECORD 2 OF 2
Last Name: GR
First Name: DARELL
DOB: 07/10/1990
Record Type: Crimina
State Of Record: MI
Database: MI WAYNE COUNTY (METRO DETROIT
WEAPONS - CARRYING CONCEALED                              RECORD 2 - CHARGE 1
File Date: 10/22/202
State Of Record: M                                 Case #: 21-007731-01-FH
Offense: WEAPONS - CARRYING CONCEALED
Offense Degree: NONCAPITAL FELONI
Statute: 750/22
Disposition: Pled Guilt
Disposition Date: 05/19/202
Category: CRIMINAL
Court Type: CRIMINAL
Fips AreaShortName: Wayne
Fips Code: 26
Fips Display: MI-Wayne (2616
Fips StateCode: MI
Category: CRIMINAL
Counts: 1
Last Updated: 07/17/2023
```

54.  The criminal record reported by Defendant about Plaintiff is grossly inaccurate.

55.  Plaintiff has never been convicted of a felony in his life.

56.  Furthermore, Plaintiff was only convicted of a misdemeanor for improper possession of a firearm in a vehicle, not for both of the subject offenses.

57.  A cursory review of the widely available underlying public court records confirms that Plaintiff never pled guilty to or was convicted of felony for carrying a concealed weapon. It further confirms that Plaintiff was not convicted of *both* of the aforementioned offenses.

58.  The public record confirms that Plaintiff was originally charged with a single felony count for carrying concealed weapons. However, on May 19, 2022,

Plaintiff pled guilty to a reduced misdemeanor charge for improper possession of a firearm in a motor vehicle.

59. The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

60. Had Defendant followed reasonable procedures, it would have discovered that Plaintiff has never been convicted of both a felony for carrying a concealed weapon and improper possession of a firearm in a vehicle and that it should not have reported the same.

61. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Franklin Denies Plaintiff's Housing Application

62. On January 20, 2024, Plaintiff was notified by Franklin, via telephone, that his housing application was denied as a direct result of Defendant's report which included a felony conviction for carrying concealed weapons and a conviction for improper possession of a firearm in a vehicle.

14

63. The leasing agent from Franklin explicitly told Plaintiff that his housing application would be approved but for the felony conviction appearing on Defendant's report.

64. Plaintiff informed the Franklin representative that he had no felony conviction as the charge had been reduced to a misdemeanor.

65. In fact, that same day of January 20, 2024, Plaintiff left work early and went to the courthouse to obtain the underlying court record proving his contentions. He obtained the underlying court records and provided them to Franklin.

66. The Franklin representative stated that the court records were exactly what they needed from Plaintiff, and that they would forward these documents to Defendant to have the tenancy screening report corrected.

67. On January 20, 2024, Plaintiff also received an email with an adverse action notice, and attached thereto was a copy of the tenant screening report.

68. Plaintiff was shocked and humiliated upon reviewing the felony conviction and the inaccuracy that Plaintiff was convicted of the two separate crimes contained within the tenant screening report.

69. Plaintiff was panicked, confused, and concerned about the impact of the inaccurate reporting that he was a convicted felon and that he was convicted of both crimes reported, not just because of rejection for the Franklin apartment, but also the impact of the same on his future.

70. Specifically, Defendant reported a felony conviction for carrying concealed weapons, a charge that was reduced to a misdemeanor for improper possession of a firearm in a vehicle, as is clearly described in the underlying court records. Defendant inaccurately reported that Plaintiff was convicted of both crimes.

71. Defendant's report further insinuates that Plaintiff spent a year in custody due to the conviction, which he did not.

72. The underlying public court record information was widely available to Defendant prior to publishing Plaintiff's tenant screening report to Franklin, but Defendant failed to perform even a cursory review of such information.

73. Plaintiff has since not heard back from Franklin regarding his tenancy application.

74. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Franklin formed a negative opinion about Plaintiff and/or moved on to other potential tenants.

75. Defendant's false report cost Plaintiff a housing opportunity that met his needs, including those attendant to comfort, affordability, safety, and proximity to work, friends, and family.

76. Plaintiff was looking forward to living at Franklin because it was in a safe neighborhood, was fifteen minutes closer to his work, and was within his budget.

77. Due to Defendant's unreasonable procedures in the first place Plaintiff has lost an ideal housing opportunity.

78. Since this incident, Plaintiff has been fearful of submitting further housing applications as he does not wish to jeopardize any other housing prospects. Additionally, Plaintiff does not want to spend more money on housing applications that will only be rejected due to inaccurate reporting.

79. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

80. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **15 U.S.C. § 1681e(b)**
### **Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

81. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

82. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

83. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

84. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

85. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

86. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

87. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant

to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

88. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

//

Dated: March 11, 2024

>By: /s/ Ryan Peterson
>Ryan D. Peterson, MI #P76538
>CONSUMER ATTORNEYS
>6600 France Ave, Suite 602
>Edina, Minnesota 55435
>E: rpeterson@consumerattorneys.com
>T: (651) 315-7656
>F: (718) 715-1750
>
>*Attorneys for Plaintiff,*
>*Darell Kennen Grant*